| | |
|---|---|
| DEBBI COTTERELL, | |
| Plaintiff, | No. 3:19-cv-822 (MPS) |
| v. | |
| GENERAL MOTORS LLC; GENERAL MOTORS FINANCIAL COMPANY, INC. d/b/a GM FINANCIAL LEASING; RICHARD CHEVROLET, INC.; and H & L CHEVROLET, INC., | December 18, 2019 |
| Defendants. | |

## RULING ON MOTIONS TO DISMISS

*Pro se* plaintiff Debbi Cotterell brought this action on May 29, 2019 against General Motors LLC ("GM"); ACAR Leasing Ltd. d/b/a GM Financial Leasing[1] ("GM Financial"); Richard Chevrolet, Inc. ("Richard Chevrolet"); and H & L Chevrolet, Inc. ("H & L") (together, "Defendants"). ECF No. 1. She filed an amended complaint against these four Defendants on July 19, 2019, alleging that they leased her a defective vehicle, which caused a power steering failure in September 2016 that injured her shoulder, and that they failed to repair the problem, refused to provide a different vehicle for the remainder of her lease, unfairly repossessed the vehicle when she stopped making lease payments, and then misleadingly reported the repossession to credit reporting agencies. Am. Compl., ECF No. 29. Her Amended Complaint alleges product liability, negligence, fraud, breach of express warranty, breach of implied warranty of merchantability, lender liability, and violations of state and federal statutes.

---

[1] Ms. Cotterell incorrectly named "General Motors Financial Company, Inc. d/b/a GM Financial Leasing" as a defendant in her action. ECF Nos. 1, 29. GM Financial has stated in its filings that the entity's proper name is ACAR Leasing Ltd. d/b/a GM Financial Leasing. ECF No. 32 at 1 n.1.

Defendants moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on August 1, 2019 and August 2, 2019. ECF Nos. 31, 34, 35, 39. Ms. Cotterell filed briefs in opposition to each motion. ECF Nos. 43, 44, 45, 46. Defendant H & L filed a reply. ECF No. 47. For the reasons below, the Court GRANTS the motions to dismiss without prejudice to Ms. Cotterell's bringing her state law claims in state court and, in the case of her FCRA claim and one related state law claim she might choose to bring, to repleading those claims in this court.

## I.    BACKGROUND

Ms. Cotterell's Amended Complaint makes the following factual allegations, which I accept as true for purposes of this motion. On August 10, 2015 Plaintiff Debbi Cotterell (along with Timothy Smith) leased a 2015 Chevrolet Impala sedan from Defendant Richard Chevrolet, a business located in Cheshire, Connecticut. Am. Compl., ECF No. 29 ¶¶ 17–19; *see also* Motor Vehicle Lease, ECF No. 32-1 at 1.[2] Ms. Cotterell reviewed advertising materials regarding the 2015 Impala before her decision to lease; Richard Chevrolet marketed the vehicle as "safe and reliable" and she leased the vehicle "believing [it] was free of any defects." *Id.* ¶19. On September 11, 2016, Ms. Cotterell was driving the vehicle when a "Steering Failure message

---

[2] As discussed below, I consider both Ms. Cotterell's Amended Complaint and documents incorporated by reference in the complaint in deciding this motion to dismiss. *See Chambers v. Time Warner*, 282 F.3d 147, 152–53 (2d Cir. 2002) (For Rule 12(b) motions, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). Here, I consider the Lease, ECF No. 32-1, which is attached to GM Financial's motion to dismiss and to which the Amended Complaint refers. *E.g.*, Am. Compl., ECF No. 29 ¶ 19 ("The Plaintiff leased the 2015 Impala believing the vehicle was free of any defects."). The document confirms that Ms. Cotterell did, in fact, *lease* the vehicle, rather than "purchase[]" it, as her Amended Complaint sometimes states. *E.g.*, Am. Compl., ECF No. 29 ¶ 18.

popped up on the dashboard." *Id.* ¶ 21. She drove to a nearby Autozone and then to H & L Chevrolet, a Chevrolet dealership in Darien, Connecticut. *En route*, "the steering began to gradually lock up which made steering difficult." *Id.* ¶¶ 22–23. She left the vehicle at H & L, and the next day a service member notified her that her power steering failed because she had two nails in her front tires. *Id.* ¶ 25. She gave H & L permission to repair the tires, the suspension, and the steering issue, and she picked up the vehicle on September 12, 2016. *Id.* The H & L service member "did not mention anything about known steering failures in the 2015 Chevy Impala or any General Motors vehicles." *Id.*

On September 14, 2016, Ms. Cotterell was driving the vehicle when the "Power Steering Failure message popped up on the dashboard again." *Id.* ¶ 26. It became very difficult to "move and maneuver" the vehicle, and "[a]t one point, her arm got twisted around in the steering wheel." *Id.* She brought the vehicle back to H & L the next day, September 15, and also "contacted General Motors Corporate office to complain about the issue she was having with [the] 2015 Impala and the pain she had in her shoulder." *Id.* ¶¶ 26–27. Per instructions from General Motors, H & L replaced the "Power Steering Rack" in the vehicle and returned it to Ms. Cotterell on September 21, 2016. *Id.* ¶ 27.

Following the September 14, 2016 steering incident, Ms. Cotterell had "pain in her right shoulder." *Id.* ¶ 28. She sought medical treatment on September 16, but the pain persisted despite "cortisone injection[s]". *Id.* A week later, the doctor ordered an MRI, which "showed a partial rotator cuff tear as well as Impingement syndrome." *Id.* Even with physical therapy, Ms. Cotterell's "pain was severe and [she] could not sleep at night," and her condition did not improve. *Id.* Eventually, Ms. Cotterell had an arthroscopic subacromial decompression surgery to repair her partial cuff tear on December 27, 2016. *Id.* For months, even though she continued

physical therapy, she continued to experience "severe pain" and "developed a substance abuse problem and started to self-medicate herself with street drugs." *Id.* ¶ 29. She suffered "emotionally, mentally, physically and financially" and "suffered loss of consortium with [her] spouse." *Id.*

After the steering incidents, Ms. Cotterell also contacted General Motors and "there was a claim opened because of the injury." *Id.* ¶ 30. She also contacted General Motors Financial Leasing ("GM Financial"), to which Richard Chevrolet had assigned the lease, and asked it "to release her out of the Lease Agreement with a new vehicle until her lease term was up. GM Financial refused." *Id.* ¶ 31; *see* ECF No. 32-1 at 3 (listing "ACAR Leasing Ltd." as the "Assignee" of the Lease); ECF No. 32 at 1 n.1 (GM Financial explaining that its proper entity name is "ACAR Leasing Ltd. d/b/a GM Financial Leasing"). Ms. Cotterell continued to make monthly lease payments on the vehicle so as not to damage her credit score, but she "called GM Financial monthly complaining" and filed a complaint "through their website under Contact Us – Complaints," but never received a response. *Id.* ¶ 32. In September 2017, Ms. Cotterell ceased making monthly lease payments, hoping to "get someone's attention." *Id.* ¶ 33. GM Financial "started to make harassing phone calls to Plaintiff on [her] cell phone and work phone," including the "main operator[']s phone" at her workplace, even though she "told GM Financial that she was not allowed to receive debt collection calls at her place of employment." *Id.* GM Financial "continues to send correspondences and/or statements to Plaintiff requesting settlement and[/]or payment of debt." *Id.* Ms. Cotterell "asked GM to stop contacting her regarding this debt and she does not owe the debt since she was leased a defective vehicle that cause[d] her injury." *Id.*

On December 18, 2017, the vehicle was repossessed, causing Ms. Cotterell "even more financial harm and embarrassment." *Id.* ¶ 34. Ms. Cotterell has asked GM Financial and its legal counsel "to stop reporting the vehicle as a repossession to the credit bureaus and update the account as in dispute . . . since the Repossession reporting does not tell an accurate picture of what happened with this consumer transaction." *Id.* ¶ 36. As of the filing of Ms. Cotterell's Amended Complaint on July 19, 2019, the tradeline was "still reported as Repossession." *Id.*

"[I]mmediately" after the repossession on December 18, 2017, Ms. Cotterell also "sent an email to Defendants General Motors and GM Financial letting them know her intentions to sue and to retain all materials in connection with this matter." *Id.* ¶ 34. GM also "acknowledged a previous complaint the Plaintiff filed against General Motors with the Michigan Consumer Protective Division." *Id.* Since the repossession, Ms. Cotterell "has asked Defendant GM Financial for [the] location of [the] vehicle and ha[s] not received a response." *Id.* ¶ 35.

On May 29, 2019, Ms. Cotterell filed this action against Defendants, and she amended her complaint on July 19, 2019. Her Amended Complaint states ten causes of action: (1) a products liability claim against GM; (2) a fraud claim against GM, Richard Chevrolet, and H & L; (3) a Connecticut Unfair Trade Practices Act (CUTPA) claim against GM, Richard Chevrolet, and H & L; (4) a Magnusson-Moss Warranty Act (MMWA) claim and a breach of express warranty claim against all defendants; (5) a breach of implied warranty of merchantability claim against GM, Richard Chevrolet, and GM Financial; (6) a negligent repair and failure to warn claim against H & L and GM; (7) a fraud and negligence claim against GM Financial; (8) a "lender liability" claim against GM Financial; (9) a Fair Credit Reporting Act (FCRA) claim against GM Financial; and (10) a Fair Debt Collection Practices Act claim against GM Financial. ECF No. 29 ¶¶ 37–125. She requests an "injunction requiring General Motors to recall and

replace all defective steering systems," and seeks both compensatory and punitive damages. *Id.* at 28. Each of the four defendants filed a motion to dismiss the amended complaint under Rules 12(b)(1) and/or 12(b)(6). ECF Nos. 31, 34, 35, 39.

In addition to the request for injunctive relief in her complaint, Ms. Cotterell also filed a motion requesting that the Court order GM Financial "to immediately update the tradeline disputed in this matter," such that the tradeline would no longer be listed as a "Reposession." ECF No. 48 at 1. I construe this motion as a motion for a preliminary injunction. GM Financial filed a brief in opposition to this motion, ECF No. 49, and Ms. Cotterell filed a reply, ECF No. 50. In her Reply, filed October 30, 2017, she states that the tradeline is reported as "Paid," but argues that "[t]his is still inaccurate credit reporting." ECF No. 50 at 1.

## II.    LEGAL STANDARDS

The "pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to 'raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). A *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers." *Bromfield v. Lend-Mor Mortg. Bankers Corp.*, No. 3:15-CV-1103 (MPS), 2016 WL 632443, at *3 (D. Conn. Feb. 17, 2016).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it . . . . A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true, and "draw[s] all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565 JCH, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In deciding a motion to dismiss under Rule 12(b), the Court may consider documents attached to, integral to, or incorporated by reference in the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("For purposes of [Rule 12(b)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)). Because Ms. Cotterell's Amended Complaint makes reference to and relies on the terms of her vehicle lease, I may consider the lease as part of her complaint. *E.g.* Am. Compl., ECF No. 29 ¶ 19 (alleging she "leased the 2015 Impala"), *id.* ¶ 31 (alleging she asked GM Financial to "release her out of the Lease Agreement"), *id.* ¶¶ 80–83 (alleging breach of express warranties); *Chambers*, 282 F.3d at 153 (finding that contracts, attached to defendants' motions

to dismiss, were properly considered "when disposing of a Rule 12(b)(6) motion" since the contracts were "integral to the Amended Complaint").

## III.     DISCUSSION

I find that Ms. Cotterell fails to state a federal cause of action in her Amended Complaint. Without any federal question adequately pled, I dismiss the federal claims and decline to exercise supplemental jurisdiction over the state law claims. As discussed below, Ms. Cotterell may replead any of her claims in state court, and I grant leave to replead one of her federal law claims, plus one related state law claim, in this court.

### A.   Fair Debt Collection Practices Act (FDCPA) Claim

In her tenth cause of action, Ms. Cotterell alleges that GM Financial violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* Am. Compl., ECF No. 29 ¶¶ 121–25. She states that "GM Financial [is a] debt collector[] as defined by 15 U.S.C. § 1692a(6)," that it was "attempting to collect an alleged debt . . . as defined by 15 U.S.C. § 1692a(5)," and that it "engaged in unlawful practices by continuing to harass Plaintiff by attempting to collect [a] debt which plaintiff has disputed. . . . in violation of 15 U.S.C. § 1692f." *Id.* ¶¶ 122–25. GM Financial argues that Ms. Cotterell fails to state a claim under the FDCPA because she has failed to plead facts showing that GM Financial is a "debt collector" under the statute. GM Financial Mem., ECF No. 32 at 13. In her opposition brief, Ms. Cotterell does not dispute this argument. She limits her response on this point to a request that the Court "allow her to amend her First Amended Complaint to change Count 10 to Connecticut state law violation of Creditors' Collection Practices Act ("CCPA")." Opp'n to GM Financial, ECF No. 46 at 17–18.

Section 1692f of the FDCPA proscribes certain unfair practices by "debt collector[s]." I agree with GM Financial that Ms. Cotterell has not alleged any facts to support her conclusory

contention in the Amended Complaint that "GM Financial [is a] debt collector[]." Am. Compl., ECF No. 29 ¶ 122. Under the FDCPA, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another . . . ." 15 U.S.C. § 1692a(6); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) ("[B]y its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself."). A "creditor" under the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." § 1692a(4).

Ms. Cotterell's lease agreement was assigned to GM Financial in the original August 10, 2015 document. Motor Vehicle Lease, ECF No. 32-1 at 3 (listing "ACAR Leasing Ltd." as the "Assignee" of the Lease); ECF No. 32 at 1 n.1 (GM Financial explaining that its proper entity name is "ACAR Leasing Ltd. d/b/a GM Financial Leasing"). And Ms. Cotterell's Amended Complaint suggests that GM Financial remained the assignee at least through September 2017, when she defaulted on her lease payments. Am. Compl., ECF No. 29 ¶ 31 ("Plaintiff asked GM Financial to release her out of the Lease Agreement . . . . GM Financial refused."); *id.* ¶¶ 32–33 ("Plaintiff continued to make monthly payments on the 2015 Impala . . . . She called GM Financial monthly complaining . . . and wanted to be put in another vehicle until the end of her lease . . . . Plaintiff continued to pay for 2015 Impala until September 2017."). These allegations suggest that GM Financial qualifies as a "creditor" under the FDCPA, since it was a party to the lease agreement before Ms. Cotterell's default and did not receive the assignment for the purpose

of facilitating the collection of a debt for another. Because Ms. Cotterell has alleged no other facts to suggest that GM Financial was a "debt collector" under the FDCPA, I find that she has failed to state a claim under § 1692f and dismiss this claim with prejudice. *Yeboah v. Bank of Am., N.A.*, No. 3:18-CV-2020 (VAB), 2019 WL 3388045, at \*12 (D. Conn. July 26, 2019) (dismissing FDCPA claim of plaintiff who "allege[d] no facts to support her conclusory allegation that Bank of America is a 'debt collector' as that term is defined by the FDCPA"); *Vitale v. First Fid. Leasing Grp.*, 35 F. Supp. 2d 78, 81 (D. Conn.) (dismissing FDCPA claims against automobile leasing and financing company because "the debt was one owed to it and thus its activities are not covered by FDCPA"), *aff'd sub nom. Vitale v. First Fid. Leasing Grp., Inc.*, 166 F.3d 1202 (2d Cir. 1998); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

Ms. Cotterell requests leave to amend "to change Count 10 to Connecticut state law violation of Creditors' Collection Practices Act ('CCPA')." Opp'n to GM Financial, ECF No. 46 at 18. Because this request must be assessed together with the Court's disposition of other state law claims in this case, I address this request below.

### B. Fair Credit Reporting Act (FCRA) Claim

Ms. Cotterell's ninth cause of action alleges that GM Financial violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.* Am. Compl., ECF No. 29 ¶¶ 111–20. She alleges that GM Financial is a "furnisher of credit information as defined by the FCRA," has "publish[ed] inaccurate information regarding [her] creditworthiness" by reporting her account as a repossession, has not "investigat[ed] and correct[ed] the improper, inaccurate[,] negative[,] derogatory credit information," and "failed to follow reasonable procedures to ensure the

maximum possible accuracy of information [] in a consumer report." *Id.* ¶¶ 113, 117–19.

Specifically, GM Financial reported her account "in good standing 'On Time' until October

2017," but then repossessed the vehicle and reported the repossession "on or after December

2017." *Id.* ¶ 115–16. Despite Ms. Cotterell's requests that GM Financial "update the account as

in dispute," GM Financial "has refused to update the 2015 Impala tradeline as in dispute" even

though the "'repossession' reporting does not tell an accurate picture of what transpired with the

consumer debt." *Id.* ¶ 117. She does not cite a particular provision of the FCRA, other than 15

U.S.C. § 1681p, which sets forth the statute of limitations. *Id.* ¶ 114.

GM Financial argues that Ms. Cotterell has "failed to state an actionable violation of the

FCRA for at least two reasons": (1) "there is no private right of action under 15 U.S.C. § 1681s-

2(a)", and (2) a furnisher's duty to investigate reported information under § 1681s-2(b) is only

triggered when the furnisher receives notice from a credit reporting agency ("CRA") of a

dispute. GM Financial Mem., ECF No. 32 at 11–12. Ms. Cotterell states in her opposition brief

that her "debt has been disputed with the CRA, GM Financial Leasing and now there is a

pending lawsuit in the matter regarding the accuracy of the credit reporting," citing Exhibit E to

the Amended Complaint. Opp'n to GM Financial, ECF No. 46 at 15; Am. Compl. Ex. E, ECF

No. 29-1 at 42 (screenshot taken on or after June 29, 2019 from Experian report listing her "Auto

Lease" from GM Financial as "Repossession," and noting in "Comments" area that "Account

information disputed by consumer under the Fair Credit Reporting Act"). She argues that

"[f]urnishers of consumer credit information who report a debt but fail to report that a consumer

disputes the debt are subject to liability under . . . §§ 1681-1681x" of the FCRA, that CRAs must

notify furnishers of disputes under § 1681i(a)(2), and that furnishers must "determine whether

the information that they previously reported to a CRA is 'incomplete or inaccurate'" under § 1681s-2(b)(1)(D). Opp'n to GM Financial, ECF No. 46 at 16.

I agree with GM Financial that Ms. Cotterell has not stated a claim under any of the cited provisions of the FCRA. Ms. Cotterell alleges that GM Financial is a "furnisher of credit information." Am. Compl., ECF No. 29 ¶ 113. 15 U.S.C. § 1681s-2 governs the responsibilities of furnishers of information to CRAs. GM Financial correctly notes that "there is no private cause of action for violations of § 1681s-2(a)." *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); § 1681s-2(d) (noting that § 1681s-2(a) "shall be enforced exclusively" by federal and state officials).

There *is* a private right of action under § 1681s-2(b), which requires that "[a]fter receiving *notice pursuant to section 1681i(a)(2)* of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall" conduct an investigation, report the results to the CRA and other relevant CRAs, and take other appropriate steps to correct any "inaccurate or incomplete" information. § 1681s-2(b) (emphasis added); *see also* § 1681s-2(c) (noting that persons can be civilly liable to consumers for violations of §1681s-2(b)). But, as GM Financial notes, "to trigger a furnisher's duty to investigate, the furnisher must receive notice from a credit reporting agency, not from a consumer directly," since that is the notice described in § 1681i(a)(2). *Longman v. Wachovia Bank, N.A.*, No. 3:09-CV-01669 JCH, 2011 WL 4352102, at *4 (D. Conn. Sept. 16, 2011), *aff'd*, 702 F.3d 148 (2d Cir. 2012). Ms. Cotterell has not alleged that any CRA provided "notice [to GM Financial] pursuant to § 1681i(a)(2)."

It is true that Ms. Cotterell's pleadings, read in the light most favorable to her, do suggest that Experian knew of her dispute. Exhibit E to the Amended Complaint, a screenshot from Ms.

Cotterell's Experian report, taken on or after June 29, 2010 notes in the "Comments" area that "Account information disputed by consumer under the Fair Credit Reporting Act." Am. Compl. Ex. E, ECF No. 29-1 at 42; *see also* Opp'n to GM Financial, ECF No. 46 at 15 ("Plaintiff's debt has been disputed with the CRA, GM Financial Leasing . . . . As you can see [in Exhibit E], the subscriber which is the Plaintiff has disputed the account as in dispute."). Ms. Cotterell does not explicitly allege in her pleadings that she notified Experian or any other CRA of her dispute, but one could infer from Exhibit E that she did.

However, this Exhibit alone is not sufficient to state a claim under § 1681s-2(b). Ms. Cotterell must allege, at least upon information and belief, that Experian notified GM Financial of the dispute pursuant to § 1681i(a)(2). *See Algende v. Bay Ridge Fed. Credit Union*, No. 14-CV-2518 DLI LB, 2015 WL 1014217, at *3 (E.D.N.Y. Mar. 9, 2015) ("While alleging that he alerted Experian credit reporting agency of the inaccurate information reported by Defendant, Plaintiff does not allege that Experian informed Defendant of the dispute as is required to trigger Defendant's duties under the FCRA. Plaintiff, therefore, has failed to allege a violation under subsection (b) or any other part of the FCRA."); *see also Hart v. Equifax Info. Servs. LLC*, No. 519CV00342BKSML, 2019 WL 4757325, at *4 (N.D.N.Y. Sept. 30, 2019) (noting that "a plaintiff need not provide documentary evidence or detailed information about the nature of the furnisher's notification by the credit reporting agency," and that "an allegation that the plaintiff reported a dispute to credit reporting agency *and* that (upon information and belief) the agency notified the furnisher of the dispute is sufficient to survive a motion to dismiss") (emphasis added).

Because Ms. Cotterell does not allege that Experian or any other CRA notified GM Financial of the dispute, she has not stated a claim under § 1681s-2(b) of the FCRA. *Longman*,

2011 WL 4352101, at *4 (finding that the complaint "does not state a cause of action under section 1681s-2(b) because at the time [plaintiff] filed his Complaint, [furnisher] had not yet received notice of a dispute from a credit reporting agency"). I grant Ms. Cotterell leave to amend her FCRA claim to allege any additional facts supporting her claim under § 1681s-2(b), including whether she notified any CRAs of her dispute and whether, even upon information and belief, any CRA notified GM Financial under § 1681i(a)(2).

Ms. Cotterell also filed a motion requesting that the Court order GM Financial "to immediately update the tradeline disputed in this matter." ECF No. 48 at 1. I construe this motion as a request for a preliminary injunction, and I deny the motion without prejudice. To prevail on a motion for a preliminary injunction, the movant must establish "irreparable harm in the absence of an injunction," and "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183–84 (2d Cir. 2019). Because Ms. Cotterell's amended complaint does not state a claim for relief under the FCRA, she has not shown a likelihood of success on the merits or sufficiently serious questions going to the merits. Her motion for a preliminary injunction is therefore denied without prejudice to renewal if she chooses to replead her FCRA claim.

## C. Magnuson-Moss Warranty Act (MMWA) Claims

In her fourth and fifth causes of action, Ms. Cotterell alleges that Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (MMWA). Am. Compl., ECF No. 29 ¶¶ 76–86. In Count Four, she states that "General Motors, GM Financial, and Richard Chevrolet, Inc. [are] 'supplier[s]' and 'warrantor[s]' as defined in the MMWA," and that all four defendants "breached express warranties" regarding the 2015 Impala. *Id.* ¶¶ 78, 83. In Count Five, she

alleges that General Motors, GM Financial, and Richard Chevrolet breached the implied warranty that the 2015 Impala "was fit and merchantable for its ordinary use[], and was not otherwise injurious to consumers." *Id.* ¶¶ 90, 92. Each of the defendants moves to dismiss Ms. Cotterell's MMWA claims against it.

### 1. *Count Four against GM Financial*

GM Financial argues that it is not liable under any written warranty, as alleged in Count Four, because it is not a "warrantor" as defined by the MMWA. I agree that Ms. Cotterell has not pled facts sufficient to support warrantor liability for GM Financial for breach of a written warranty.

Under the MMWA, a "warrantor" is "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. § 2301(5). Section 2310(d) of the MMWA does create a private right of action for consumers harmed by violations of the statute, but § 2310(f) states that "[f]or purposes of this section, only the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person." Courts in this Circuit have read § 2310(f) to exclude "assignee liability" for breach of a written warranty, "where the assignee is not the person who created the written warranty." *Pierre v. Planet Automotive, Inc.*, 193 F. Supp. 3d 157, 175 (E.D.N.Y. 2016); *King v. A Better Way Wholesale Autos, Inc.*, No. 3:17-CV-885(AWT), 2018 WL 5993925, at *3 (D. Conn. Sept. 10, 2018); *see also Pyskaty v. Wide World of Cars, LLC*, No. 15 CIV. 1600 (JCM), 2019 WL 917153, at *12 (S.D.N.Y. Feb. 25, 2019) (noting that the text of the statute expressly limits "assignee liability for breach of written warranties" but not for breach of implied warranties).

Ms. Cotterell's Amended Complaint does not adequately allege that GM Financial was a warrantor "actually making a written affirmation of fact, promise, or undertaking," as required for MMWA liability for breach of a written warranty. § 2310(f). Her only allegation regarding an express warranty by GM Financial is a conclusory statement that "Defendant General Motors, GM Financial, and Richard Chevrolet expressly warranted that the 2015 Impala would be f[r]ee of defects at the time of delivery." Am. Compl., ECF No. 29 ¶ 81. The Amended Complaint does not provide any further details of this purported express warranty, and a conclusory allegation by itself is not sufficient to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted). With respect to any express warranties in the Lease, GM Financial was the assignee of the Lease, ECF No. 32-1 at 3, and the MMWA precludes assignee liability. *Pierre*, 193 F. Supp. at 175.

In her brief in opposition to GM Financial's motion to dismiss, Ms. Cotterell is unable to point to any portion in the Amended Complaint alleging facts to support her contention that GM Financial is subject to liability as an express warrantor under the MMWA. *See* Opp'n to GM Financial, ECF No. 46 at 10 (stating without citation that "GM Financial Leasing issued an express written warranty that covered the 2015 Impala"). In fact, her brief suggests that GM issued a written warranty to GM Financial, which then "assigned its rights under the written warranty to Plaintiff," which would make GM Financial a warrantee, not the warrantor. *Id.* at 7. Because Ms. Cotterell does not adequately allege that GM Financial "actually ma[de] a written affirmation of fact, promise, or undertaking" regarding the vehicle, she has not stated a claim against GM Financial for breach of a written warranty under 15 U.S.C. § 2310(f).

### 2. *Counts Four and Five Against All Defendants*

The Amended Complaint alleges that Defendants breached both an express warranty and the implied warranty of merchantability, in violation of the MMWA. Consumers may bring MMWA claims in federal court, however, only "if the amount in controversy [meets or exceeds] $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). Though the Amended Complaint does allege "damages in excess of $100,000," Am. Compl, ECF No. 29 ¶¶ 86, 92, the Defendants argue that Ms. Cotterell's potential damages are actually "far less" than the $50,000 threshold. *E.g.*, Richard Chevrolet Mot. to Dismiss, ECF No. 35 at 10 (arguing that "the most plaintiff would have paid towards the vehicle under the lease was $21,378.96"); Motor Vehicle Lease, ECF No. 32-1 at 1 (showing $21,378.96 in scheduled payments plus $6,299.41 due at signing, totaling $27,084.51 to be paid by the end of the Lease); *see also* H & L Mot. to Dismiss, ECF No. 40 at 10 (arguing Ms. Cotterell "has not sufficiently pled facts to support a finding that she satisfied [the MMWA's] amount in controversy requirement"); GM Mot. to Dismiss, ECF No. 34-1 at 3 ("Plaintiff has not pled any information about . . .what the breach of warranty claim was worth."). Ms. Cotterell also requests injunctive relief against GM, arguing that she has "suffered irreparable damages" "[b]ased upon General Motors' breach of express warranties [and] implied warranties of merchantability." Am. Compl., ECF No. 29 ¶ 127. I agree with the Defendants that the Amended Complaint's MMWA claims do not sufficiently allege an amount in controversy of at least $50,000.

In general, "[w]hile [courts] presume that the face of the complaint is a good faith representation of the actual amount in controversy, a defendant may rebut that presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that

the damages alleged were feigned to satisfy jurisdictional minimums. To do so, the defendant may present, and the court may consider, evidence outside the pleadings, including affidavits." *Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 53 (2d Cir. 2018) (internal citations and quotation marks omitted). Courts apply the same standard in calculating the amount in controversy under the MMWA. *Schultz v. Gen. R.V. Ctr.*, 512 F.3d 754, 756 (6th Cir. 2008) (finding that, "[a]lthough we have generally applied the legal certainty test in the context of 28 U.S.C. § 1332's amount in controversy requirement for diversity jurisdiction, we agree with our sister circuits that it applies with full force and effect in the context of MMWA's amount in controversy requirement," and citing cases from the Ninth and Seventh Circuits); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) (applying the "legal certainty" test to MMWA claim); *Enobakhare v. Carpoint, LLC*, No. 08 CV 4798 ARR, 2011 WL 703920, at *10 (E.D.N.Y. Jan. 10, 2011) (same), *report and recommendation adopted*, No. 08-CV-4798 ARR CLP, 2011 WL 704902 (E.D.N.Y. Feb. 16, 2011).

In evaluating the amount in controversy, "computed on the basis of all claims to be determined in this suit" under the MMWA, 15 U.S.C. § 2310(d)(3)(B), courts have found that pendent state law claims, interest, and attorneys' fees are all excluded from the calculation. *Angelillo v. Harte Nissan, Inc.*, No. 3:09-CV-1313, 2010 WL 569887, at *3 (D. Conn. Feb. 17, 2010) ("Pendent state law claims are not included in determining whether the value of 'all claims' reaches the jurisdictional threshold."); *Jiminez v. Going Forward, Inc.*, 25 F. Supp. 2d 54, 55 (D. Conn. 1998) ("[B]y its terms, Magnuson–Moss expressly excludes 'interests and costs' from the amount in controversy. 15 U.S.C. § 2310(d)(3)(B). Attorneys' fees are among those costs that must be excluded."); *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984) ("Nor may the claim for attorneys fees be used to satisfy the jurisdictional amount,

because § 2310(d)(3) [excludes 'costs'].”). Therefore, “[t]he 'claims' referred to [in § 2310(d)(3)(B)] are any claims under the [MMWA].” *Jimenez*, 25 F. Supp. 2d at 55.

Under the MMWA, “when the warrantor breaches a 'full' written warranty, the plaintiff is entitled to a refund or replacement without charge for the defective product. . . . [Where] the warrantor made only a 'limited' written warranty, . . . courts should look to state law to determine the applicable measure of damages.” *Pyskaty*, 856 F.3d at 223 (internal citations omitted). Under Connecticut law, the value of damages for a breach of warranty is “the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if the goods had been as warranted, unless special circumstances show proximate damages of a different amount.” Conn. Gen. Stat. § 42a-2-714(2). Consequential damages are available “[i]n a proper case” for breach of warranty, Conn. Gen. Stat. § 42a-2-714(3), but “the MMWA specifically precludes recovery [under the MMWA] for personal injury,” with narrow exceptions.[3] *Trisvan v. Checkers Drive-In Restaurants, Inc.*, No. 16-CV-7000, 2019 WL 332177, at *4 (E.D.N.Y. Jan. 25, 2019); 15 U.S.C. § 2311(b)(2); *see also Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034, 1038–39 (9th Cir. 2004) (finding that “loss of enjoyment” is “precisely the type of relief potentially available under state law but not under the [MMWA],” since it is an “injury to the person”); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (“[P]ersonal injury claims based on a breach of warranty are not

---

[3] 15 U.S.C. § 2311(b)(2) states, in relevant part, “Nothing in this chapter (other than sections 2308 and 2304(a)(2) and (4) of this title) shall (A) affect the liability of, or impose liability on, any person for personal injury, or (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury.” Section 2308 addresses suppliers' disclaimers, modifications, or limitations of implied warranties. Sections 2304(a)(2) and (a)(4) set requirements for a warrantor to meet Federal minimum standards for a written warranty on a consumer product. Ms. Cotterell does not allege any violation of either of these sections.

cognizable under the Magnuson–Moss Act."). Contrary to Ms. Cotterell's assertion in her opposition brief, she is *not* entitled to recover a sum for her "medical costs . . . actual damages . . . pain and suffering; mental anguish" under the MMWA, Opp'n to Richard Chevrolet, ECF No. 43 at 12, and any such damages "may not be counted toward satisfaction of the [\$50,000] amount-in-controversy requirement." *Blank v. Timbrook Pontiac-Cadillac-Nissan, Inc.*, No. CV MJG-05-1640, 2006 WL 8456640, at *2 (D. Md. Mar. 1, 2006) (quoting *Boelens*, 748 F.2d at 1069).

Punitive damages are "recoverable under the MMWA if they would be recoverable in a breach-of-warranty action brought under governing state law." *Pyskaty*, 856 F.3d at 225. "Under Connecticut law, punitive damages are available for a claim of breach of warranty if plaintiff alleges conduct that is 'done with a bad motive or with a reckless indifference to the interests of others.'" *Makuch v. Stephen Pontiac-Cadillac, Inc.*, No. 3:12-CV-866, 2013 WL 45887, at *2 (D. Conn. Jan. 3, 2013) (quoting *L.F. Pace & Sons, Inc. v. Travelers Indemnity Co.*, 9 Conn. App. 30, 48, 514 A.2d 766 (1986)). And in Connecticut, common law "[p]unitive damages . . . are measured" by the litigation costs incurred by the plaintiff. *Makuch*, 2013 WL 45887, at *2; *Berry v. Loiseau*, 223 Conn. 786, 825, 614 A.2d 414 (1992) (confirming the "well established rule" that common law punitive damages are limited to litigation costs).

In her Amended Complaint, Ms. Cotterell alleges that she suffered "damages in the excess of \$100,000" as a result of the Defendants' breach of express and implied warranties. Am. Compl, ECF No. 29 ¶¶ 86, 92. Though she alleges that she has suffered "physical, actual damages and loss of use of [the] vehicle," *id.* ¶ 83–84, 92, she does not apportion the \$100,000 figure to different types of damages. In her general prayer for relief, she also seeks punitive

damages. *Id.* at 28. These statements do not sufficiently allege an amount in controversy under the MMWA of at least $50,000 for the following reasons.

First, her allegations of "damages in the excess of $100,000" in connection with her MMWA claims are conclusory; she pleads no facts to support her contention that the defendants' breach of warranty caused damages in this amount. *Wood v. Maguire Auto., LLC*, 508 F. App'x 65 (2d Cir. 2013) ("[Plaintiff's] allegation in her complaint of $75,000 in controversy is conclusory and not entitled to a presumption of truth.").

Next, the damages for a breach of warranty claim are, at most, a full "refund or replacement without charge for the defective product," *Pyskaty*, 856 F.3d at 223 (describing damages amount for breach of a full, written warranty), or, under Connecticut law, "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if the goods had been as warranted," barring "special circumstances." Conn. Gen. Stat. § 42a-2-714(2). As Defendant Richard Chevrolet points out, Ms. Cotterell's Lease shows that "the most plaintiff would have paid towards the vehicle under the lease was $21,378.96." ECF No. 35 at 10; Motor Vehicle Lease, ECF No. 32-1 at 1 (showing $21,378.96 in scheduled payments plus $6,299.41 due at signing, totaling $27,084.51 to be paid by the end of the Lease). Because personal injury damages are excluded from MMWA claims, *Trisvan*, 2019 WL 332177, at *4, Ms. Cotterell's compensatory damages for any breach of warranty regarding the 2015 Impala would be, at most, the amount she paid under the lease—*i.e.*, $27,084.51 at most. She alleges no other consequential damages, mentioning only her "physical, actual damages and loss of use of [the] vehicle." Am. Compl., ECF No. 29 ¶ 83–84, 92.

Ms. Cotterell also claims that she has "suffered irreparable damages" as a result of "General Motors' breach of express warranties [and] implied warranties of merchantability," and

seeks an injunction requiring GM to "recall and replace all defective steering systems." *Id.* at 28. This claim does not increase the amount in controversy under the MMWA. First, Ms. Cotterell lacks standing to request this form of injunctive relief for herself since she no longer possesses the 2015 Impala, and, of course, she lacks standing to request relief on behalf of others. Plus, in actions for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 276 (2d Cir. 2006). The value of her request for an injunction would therefore be limited to "the value of the object of the litigation," which would be the value of the lease. *DiTolla*, 469 F.3d at 276.

As mentioned above, the value of pendent state law claims and attorneys' fees are not included in determining the amount in controversy under the MMWA, so the only remaining claim that could affect the amount in controversy under the MMWA is Ms. Cotterell's claim for punitive damages. Punitive damages in Connecticut are limited to the plaintiff's litigation costs; since Ms. Cotterell is litigating this suit *pro se*, her costs are likely quite low, and it is unlikely that her costs would exceed $20,000 (roughly the amount needed to bring the total amount in controversy to $50,000) even by the end of the litigation.

In any event, Ms. Cotterell also fails to plead sufficient facts to support her claim for punitive damages, since she does not allege facts suggesting that any of the Defendants' conduct was "done with a bad motive or with a reckless indifference to the interests of others." *L.F. Pace & Sons, Inc.*, 9 Conn. App. at 48. While she alleges that she "believes Defendants General Motors, Richard Chevrolet, and H & L Chevrolet have been aware of [the] Steering Defect prior to [the] 2015 Impala being sold," she does not allege any facts to support this belief. The exhibits attached to her complaint regarding product defects and recalls relate to different vehicle models than the 2015 Impala at issue in this case, *see* Exhibit C, ECF No. 29-1 at 6 (recalls for 2014

Chevrolet Impala); Exhibit D, ECF No. 29-1 at 16–19 (owner comments on 2014 Chevrolet Impala); *id.* at 20–23 (news article regarding "some models of the 2013-14 Buick Verano, Chevrolet Cruze and Chevrolet Malibu"); *id.* at 24–34 (product safety notice regarding 2014 Chevrolet Impala); *id.* at 35–36 (news article regarding "Chevy Cruz, Chevy Malibu, and Buick Veranos"); *id.* at 37–40 (news article regarding "Cadillacs, Camaros, Corvettes"), or postdate Ms. Cotterell's lease of the 2015 Impala in August 2015, *see* Exhibit D, ECF No. 29-1 at 11–15 (owner comments on 2015 Chevrolet Impala, posted between October 2015 and May 2019). None of these exhibits permits a reasonable inference that any Defendants were aware of a steering defect in the 2015 Impala as of August 2015. And while she states in the Amended Complaint that the Defendants "made affirmative misrepresentation and/or active concealment and omission of material facts" as part of a "course of conscious and/or intentional conduct . . . in order to avoid losses in sales to consumers and market share to its major competitors," she does not point to any specific affirmative misrepresentations or "active concealment and omission," and points to no other facts supporting her allegation of "conscious and/or intentional conduct." Am. Compl. ECF No. 29 ¶ 58.

I find that Ms. Cotterell has not pled sufficient facts to support a claim for punitive damages under the MMWA. Therefore, the amount in controversy under the MMWA would be, at most, $27,084.51. Because this amount falls short of the jurisdictional minimum, I dismiss Ms. Cotterell's MMWA claims for lack of subject matter jurisdiction. She may, of course, pursue her MMWA claim and/or the underlying breach of warranty claims in state court.

### D. State Law Claims

Because Ms. Cotterell's federal statutory claims under the FCRA, FDCPA, and MMWA are dismissed, her Amended Complaint no longer presents any valid basis for federal subject

matter jurisdiction.[4] Her complaint asserts that jurisdiction is based on federal question jurisdiction, 28 U.S.C. § 1331, and violations of the federal statutes mentioned above. Ms. Cotterell does not allege diversity jurisdiction under 28 U.S.C. § 1332 or any other basis for federal subject matter jurisdiction. *See* Am. Compl., ECF No. 29 ¶¶ 7–13.

28 U.S.C. § 1367 permits federal courts to exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." Section 1367(c)(3) specifically instructs that district courts "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." The Second Circuit has stated that "where, as here, the federal claims are eliminated in the early stages of litigation, courts *should* generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (emphasis added). Section 1367(c)(2) also notes that district courts may decline supplemental jurisdiction over a state law claim if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction."

This case is still in the early stages of litigation, and I have dismissed Ms. Cotterell's federal claims, so I decline to exercise supplemental jurisdiction under § 1367(c)(3). I also find that § 1367(c)(2) applies since her state law claims—especially her product liability claim— would "substantially predominate[]" over her federal claims, to the extent Ms. Cotterell chooses

---

[4] Ms. Cotterell's "lender liability" claim against GM Financial, Am. Compl., ECF No. 29 ¶ 106, cites 16 C.F.R. § 443, which is sometimes referred to as the "holder rule" and which makes it an unfair trade practice under section 5 of the Federal Trade Commission Act for a seller to fail to include in a consumer credit contract language making any assignee of such a contract subject to the same claims and defenses the debtor would have against the seller. This regulation, however, does not create a private cause of action. *See, e.g.*, *United States v. Hollis*, No. SA-08-CV-0362 NN, 2008 WL 4179474, at *2 & n.13 (W.D. Tex. Sept. 7, 2008) (citing cases).

to replead her FCRA claim. The case is primarily about an allegedly defective steering mechanism in a vehicle leased by the plaintiff and on which she stopped making payments, and the personal injuries she allegedly suffered as a result of that defective mechanism when trying to operate the vehicle. Proof of defect and damages for her alleged personal injuries will likely occupy the bulk of trial and may require expert testimony. The core of the case thus consists of state law claims. For the reasons stated above, Ms. Cotterell has not stated a claim under either the FDCPA or the MMWA, and it does not appear that she could replead these claims to address the defects identified. If she could successfully replead her FCRA claim, which alleges that GM Financial failed to correct information it provided to the CRAs, that claim would be relatively simple, would be legally and factually distinct from her products liability and personal injury claims, and would require relatively little evidence. Even if she repleaded her FCRA claim, therefore, I would find that Ms. Cotterell's state law claims substantially predominated. Based on both §§ 1367(c)(2) and (c)(3), I decline to address Ms. Cotterell's state law claims and dismiss them without prejudice to her refiling them in state court.

I make an exception, however, for any CCPA claim Ms. Cotterell chooses to plead against GM Financial. Ms. Cotterell has sought permission to amend her complaint to bring such a claim and could conceivably state such a claim against GM Financial since the CCPA applies to any "creditor," rather than only to debt collectors who collect debt on behalf of another. Conn. Gen. Stat. § 36a-646; § 36a-645 (defining "[c]reditor" as "any person to whom a debt is owed by a consumer debtor" and "any person to whom such debt is assigned"). A CCPA claim would be closely related to the FCRA claim and would not "substantially predominate[]" over the FCRA claim if it were joined with that claim in a federal action. Thus, if she wishes, Ms. Cotterell may add to any FCRA claim a claim against GM Financial under the CCPA. Or, to the extent she can

plead diversity jurisdiction, she may bring a CCPA claim by itself against GM Financial in this court.

## IV.     CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss, ECF Nos. 31, 34, 35, 39, are GRANTED. Ms. Cotterell's FDCPA claim is dismissed with prejudice, and her FCRA, MMWA, and state law claims are DISMISSED without prejudice.

When evaluating *pro se* complaints, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, if repleading a claim would be futile, the court should not grant leave to amend. *Id.*; *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998). Here, Ms. Cotterell already had the opportunity to amend her complaint following the Defendants' original motions to dismiss, *see* Order, ECF No. 26 (allowing plaintiff to "file an amended complaint that addresses the defects identified in the Defendants' motions to dismiss"), although those original motions to dismiss focused solely on the lack of diversity jurisdiction, and not on the more substantive defects in Ms. Cotterell's federal statutory claims. ECF Nos. 15, 17, 20, 24. Nonetheless, I find that repleading her FDCPA claim and repleading her MMWA claim in federal court would be futile, since even a "liberal reading of the complaint" does not suggest that GM Financial is a "debt collector" under the FDCPA (and Ms. Cotterell does not meaningfully oppose dismissal of her FDCPA claim), or that Ms. Cotterell could meet the $50,000 jurisdictional minimum under the MMWA, even with better pleading. *See Cuoco*, 222 F.3d at 112 (denying leave to replead when "[t]he problem with [plaintiff's] causes of action is substantive [and] better pleading will not cure it").

While I do not grant leave to replead the FDCPA claim or the MMWA claim in this court, I do grant Ms. Cotterell leave to amend her FCRA claim against GM Financial. If she wishes to file such an amended complaint in this Court, she must do so within thirty days. The amended complaint must be limited to her FCRA claim against GM Financial (plus any CCPA claim against GM Financial, as discussed above). She is also free to bring her FCRA claim, her MMWA claim, and her state law claims in state court.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       December 18, 2019